UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAM BOWEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CASE NO.  1:23-cv-118-RLY-TAB |
| ) | |
| JAMES ISON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ON COUNTS ONE AND THREE**

**I.  INTRODUCTION**

During the final weeks of the 2023 Greenwood Republican mayoral primary campaign, Plaintiff Sam Bowen ("Bowen"), at the time a Greenwood, Indiana police officer, posted a number of comments on Greenwood-oriented Facebook pages.  Bowen's posts were critical of Defendant Police Chief James Ison ("Ison"), and Defendant Republican mayoral candidate (and incumbent Mayor) Mark Myers ("Myers"), for what Bowen perceived to be a lack of transparency in sharing information about criminal activity with Greenwood residents, and about low morale in the Greenwood Police Department ("GPD").  Bowen's posts were all made as part of various "chat strings" on the Facebook pages, and Bowen never identified himself in any way as a Greenwood police officer.

On Primary Election Day, Ison summoned Bowen to his office and informed him that, effective immediately, Bowen's privilege for take-home/personal use of his assigned police vehicle was revoked, as was Bowen's off-duty employment privilege.  Ison made it clear that these actions were taken because of Bowen's Facebook posts.

Bowen thereafter sought a meeting with Myers to address the situation. Although Myers met with Bowman, he refused to take any action to reverse Ison's punitive actions, and for the remainder of his employment with the GPD, Bowen suffered financial losses from both the loss of his off-duty employment, and the loss of take-home/personal use of his police vehicle. Bowen also suffered emotional distress and embarrassment as a result of Ison's action.

Ison and Myers effectively punished Bowen for exercising his First Amendment right to freedom of speech.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**Bowen posts Facebook comments critical of Ison, Myers, and the GPD during the 2023 Republican mayoral primary in Greenwood.**

Bowen began his employment with GPD as a patrolman in October 2020. (Bowen Dec., ¶ 1; Ds' Ans., ¶ 7).[1] Ison considered Bowen a "very productive" officer. (Exhibit B, p.75:17-18).[2]

During the 2023 Republican mayoral primary in Greenwood, incumbent Mayor Mark Myers was running for reelection against challenger Joseph Hubbard. Hubbard was supported by a number of police officers. (Myers Dep., p. 11:7-9).[3] Myers believed that the officers were supporting Hubbard because they "were not treated well, that they were not respected, and they were not paid enough." (Myers Dep., p. 11:9-12). Additionally, according to Myers, "[t]here was a public debate on social media about the amount of crime being committed in the community, the number of homicides we had." (Myers Dep., p. 11:15-17).

---

[1] Citations to "Bowen Dec., ¶ X" refer to the correspondingly-numbered paragraph(s) in Exhibit A: Declaration Under Oath of Samuel Bowen."

[2] Citations to "Exhibit B, p. X" refer to the correspondingly-numbered page(s) and line(s) of the Greenwood Police Merit Commission Hearing, October 11, 2023.

[3] Citations to "Myers Dep., p. X:Y" refer to the correspondingly-numbered page(s) and line(s) of Exhibit F: Mark Myers Deposition.

Bowen made a number of posts on two Greenwood-centric Facebook pages, "Greenwood Chatter" and "Greenwood, Indiana Crime Tracker". (Bowen Dec., ¶ 9; Exhibit B).[4] Bowen's posts, which were made in various "chat strings" concerning crime in Greenwood, referred to both Ison and Myers by name, and were critical of both men for what Bowen believed was a lack of transparency in reporting crime, and for causing low morale on the GPD. (Bowen Dec., ¶ 10; Exhibit B).

All of Bowen's posts were made while he was off-duty, and on his own time. (Bowen Dec., ¶ 11). Bowen did not identify himself as a Greenwood police officer in any of his posts. (Bowen Dec., ¶ 12; Exhibit B). His Facebook profile did not identify Bowen as a Greenwood police officer, nor did his photograph show Bowen wearing a GPD uniform. (Bowen Dec., ¶ 12; Exhibit B).

Myers won the 2023 Republican mayoral primary with 55 percent of the vote. (Myers Dep., p.10:9-11). He was unopposed in the general election. (Myers Dep., p 10:12-16). Myers ran on public safety, and on increasing the size of the police and fire departments, among other issues. (Myers Dep., p. 10:17-23).

Greenwood Police Merit Commission (GPMC") President Wendy Trietsch ("Trietsch") questioned Ison about officers' online posts following the April 2023 GPMC meeting. (Ison Dep., p. 25:6-11). Ison told Trietsch that "several officers are, you know, are posting online social media in support of the opposing candidate. However, that's not violating policy. They can do that. They're on their own time. They can support any political candidate they want." (Ison Dep., p. 25:17-23).[5]

However, Ison went on to say "We do have two, however, that are crossing the line and violating policy by stating, by airing personal employee grievances, discussing department business,

---

[4] Citations to "Exhibit C" refer to Exhibit C: Sam Bowen's social media posts.

[5] Citations to "Ison Dep., p. X:Y" refer to the correspondingly-numbered page(s) and line(s) of Exhibit G: James Ison Deposition.

and being disrespectful towards other members of the Agency[.]" (Ison Dep., pp. 25:24-26:4).  Ison initially told Treitsch he intended to "take the higher road[.]"  (Exhibit B, p. 89:3-5).  Treitsch reminded Ison that the Merit Commission could take action on its own.  (Exhibit B, p. 86:11-13).

> **Ison disciplines Bowen for making the posts by revoking Bowen's permission to work "off-duty employment" ("ODE") and by revoking Bowen's "take-home/personal use" of his police vehicle.**

On May 2, 2023, the day of the primary election, Ison called Bowen into his office and revoked Bowen's take-home car privileges and his off-duty work privileges. (Ison Dep., p. 12:18-25; Bowen Dec., ¶ 13).

When Bowen entered, Ison informed him that, effective immediately, Ison was revoking Bowen's Take Home Car ("THC") privileges, and Off-duty Employment ("ODE") privileges. (Bowen Dec., ¶ 15).   This meant Bowen was no longer allowed to drive his police car home after his shift, or to use his police vehicle for personal use.  (*Id*., ¶ 16).  It also meant that Bowen was no longer allowed to work off-duty security assignments which required an actual off-duty policeman. (*Id*.).

Ison told Bowen that the decision to revoke Bowen's THC and ODE privileges was solely within Ison's discretion.  (*Id*., ¶ 17).  When Bowen asked if he could ask questions, Ison responded that Bowen "was dismissed."  (*Id*., ¶ 18).

THC privileges are routinely granted to virtually all GPD officers who have an assigned vehicle. (Bowen Dec., ¶ 19).  Not being able to use his police vehicle for personal business meant Bowen was forced to use his own vehicle, which he could not refuel from the City's gas pumps. (*Id*.).  Bowen estimates his actual financial loss from the loss of his THC privileges to be $1,650 between May 2 and August 7, when he was suspended over an unrelated matter. (*Id*., ¶ 20).  In addition, Bowen estimates he lost approximately $10,080 as a result of his ODE privileges being

suspended. (*Id*., ¶ 21). The lost income from his ODE work was particularly hard on Bowen because his home, in New Whiteland, Indiana, had been damaged by tornadoes earlier in the year, (*Id*., ¶ 22).

Ison admits his actions were an "informal" disciplinary action. (Ison Dep., p. 36:21-24). Ison did so because of multiple Facebook posts that Bowen had made, (Ison Dep., p. 13:1-7).

### The GPD's Speech, Expression and Social Networking Policy and Standards of Conduct.

*The GPD's Speech, Expression and Social Networking Policy.*

The GPD's Policy 1026: Speech, Expression and Social Networking ("Social Media Policy") specifically states that "nothing in this policy is intended to prohibit or infringe upon any communication, speech, or expression that is protected under law." (Ison Dep., p. 29:7-13; Exhibit D, p. 1, § 1026.1).[6] The policy also states that GPD officers "maintain their rights to vote as they choose, to support candidates of their choice, and to express their opinions as private citizens on political subjects and candidates at all times while off duty." (Ison Dep., p. 38:12-18; Exhibit D, p.3, § 1026.4.1).

*GPD's Standards of Conduct.*

GPD's Standards of Conduct ("Standards") require all members of GPD to "conduct themselves, whether on- or off-duty, in accordance with the United States and Indiana constitutions and all applicable laws, ordinances, and rules enacted or established pursuant to legal authority." (Exhibit E, p. 2, § 320.4).[7] According to the Standards, "[d]iscipline may be initiated for any good cause. It is not mandatory that a specific policy or rule violation be cited to sustain discipline. This

---

[6] Citations to "Exhibit D, p. X, § Y" refer to the correspondingly-numbered page(s) and section(s) of GPD Policy 1026: Speech, Expression and Social Networking.

[7] Citations to "Exhibit E, p. X, § Y" refer to the correspondingly-numbered page(s) and section(s) of GPD Policy 320: Standards of Conduct.

policy is not intended to cover every possible type of misconduct." (*Id.*).

Specifically, the Standards prohibit "[b]eing untruhful or knowingly making false, misleading or malicious statements that are reasonably calculated to harm the reputation, authority or official standing of this agency or its members." (*Id.*, p. 5, § 320.5.8(d)). In addition, the Standards also prohibit "[d]isparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of this agency or subverts the good order, efficiency and discipline of this agency or that would tend to discredit any of its members." (*Id.*, § 320.5.8(e)).

With respect to "Improper political activity" that Standards prohibit "[u]nauthorized attendance while *on duty* at official legislative or political sessions[,] "[s]olicitations, speeches or distribution of campaign literature for or against any political candidate or position while *on duty*, on agency property *or while in any way representing him/herself as a member of this agency*, except as expressly authorized by City policy, the collective bargaining agreement or the Chief of Police[,] and "[p]lac[ing] or affix[ing] any campaign literature on city/county-owned property." (*Id.*, § 320.5.8(g)).

Other prohibited actions include:

- "Use official authority to interfere with any election or interfere with the political actions of other employees or the general public." (Exhibit E, p. 5, § 320.5.8(h));

- "Engaging in political activities during assigned working hours except as expressly authorized by City policy, the collective bargaining agreement, or the Chief of Police." (*Id.*, § 320.5.8(i)); and

- "Any act on- or off-duty that brings discredit to this agency." (*Id.*, § 320.5.8(j)).

<u>Bowen's Social Media Posts.</u>

Ison said Bowen violated GPD's standards of conduct by calling Myers "liberal Mark Myers," and referring to Ison as "the 'Yes Man,' James Ison." (Ison Dep., p. 15:4-9). Ison also stated that Bowen's comment that Ison and Myers had "decided to turn Greenwood into 'Little Indy'" was

insubordinate and disrespectful.  (Ison Dep., p. 15:90-12).

Ison also referred to a post in which Bowen said Ison "lied through his teeth and claimed violent crime was not up."  (Ison Dep., p. 15:14-17).  Ison called that statement "disrespectful" and "not supported by facts."  (Ison Dep., p. 15:22-24).

According to Ison, Bowen was "falsely accusing [Ison] of lying to the public, which [was] damaging . . . to [Ison's] credibility as the [police] chief[.]" Moreover, Ison claimed Bowen's post were "damaging to [Ison's] credibility as a leader and . . . in the eyes of the people that [Ison] serve[s] and manage[s]."  (Ison Dep., pp. 16:24-17:2).

Ison also referred to one of Bowen's posts in which Bowen said it was "very honorable of the Mark Myers gang . . . to attack a man with a false narrative of a situation days before the election. It's disreputable that Myers has chosen to run an attack campaign on [Myers' primary opponent, Joe] Hubbard instead of addressing the issues the voters have with him."  (Ison Dep., p. 17:14-20).

In one post, Bowen referred to Myers as the "Nancy Pelosi of Johnson County, a failed career politician who has no understanding of what the people he represents wants and refuses to listen." (Ison Dep., pp. 17:23-18:2).

Bowen also criticized Ison's leadership of GPD, saying

> [Ison] and his appointed road commander's failed leadership has tanked morale at the department. The Greenwood Police Department is not a proactive department.  They've been forced to be reactive for some time now because of short staffing in the chief's police to police tactics. Chief Ison has made the fear tactic of retaliation his biggest leadership trade.

(Ison Dep., p. 18:14-23).

According to Bowen,

> I wish the police department would be more transparent and post what is actually going on all the time.  Unfortunately, Chief Ison tries to sweep most things under the rug. I would also appreciate it if they

>would post their accomplishments of large drug busts, arresting violent offenders, et cetera, so that we could know how much our police department is doing for us. I believe it would also significantly boost the officers' morale if they were being appreciated. Seems like an easy thing to do to ease a lot of the tension between everyone.

(Ison Dep., p. 19:11-25).

Bowen criticized what he perceived as Ison's lack of transparency: "I think something you should wonder is why the Greenwood Police Department has not released any statement about [an incident involving a stolen U-Haul trailer being driven into a building] or why they never notify the public about anything unless it's hiring 12 new officers right before an election to make the mayor look good." (Ison Dep., pp. 20:25-21:7).

"I would say someone recklessly driving a stolen U-Haul and shooting a gun, then driving said U-Haul into a building absolutely warrants a story. And it's so draining on resources for someone from the police department to take five minutes and post what happened on Facebook." (Ison Dep., p. 21:19-25). Although Ison characterized Bowen's concern as a "personal grievance," he admits that the perception of GPD as lacking transparency would be an issue of public concern. (Ison Dep., pp. 26:21-27:8).

*The Context of Bowen's Facebook Posts.*

Bowen's Facebook posts were made within the context of a "very contentious" primary election campaign in which the issues Bowen addressed were front and center. (Ison Dep., p. 15:4-9; Bowen Dec. ¶¶ 5-8). In that election campaign, incumbent Mayor Mark Myers was being challenged in his bid for reelection. (Myers Dep., p. 11:7-12; Bowen Dec., ¶¶ 5-8). There was "a public debate on social media about the amount of crime being committed in the community, the number of homicides [in Greenwood]." (*Id.*).

The crime rate in Greenwood is "absolutely" an issue of public concern in Greenwood,

according to Myers. (Myers Dep., p. 16:1-3; Bowen Dec., ¶ 8). People who live and work in Greenwood have a legitimate interest in the police department's transparency. (Myers Dep., p. 23:19-23). The morale of the GPD is an issue of public concern. (Myers Dep., p. 24:13-16; Bowen Dec., ¶ 8). Indeed the election itself is a matter of public concern. (Myers Dep. pp. 24:25-25:2).

Although Bowen was suspended without pay, and ultimately terminated from the GPD, his suspension and termination had nothing to do with Bowen's social media posts during the primary election, or Ison's actions in response to those posts. (Exhibit B, pp. 83:19-84:13).

Additional facts will be provided as required.

### III. SUMMARY OF THE ARGUMENT

The First Amendment guarantees the right of citizens to speak freely, without fear of government retaliation. And while the government, as an employer, can exercise substantial control over the speech of its employees, that control does not extend to situations in which a government employee is speaking as a private citizen, addressing matters of public concern. Even when the employee addresses matters of public concern in the context of his own job, the government cannot prohibit the employee from speaking his mind about the issue as a private citizen.

Bowen's posts on the "Greenwood Chatter" and "Greenwood, Indiana Crime Tracker" Facebook pages addressed the GPD's transparency in reporting crimes, the level of crime in Greenwood, and morale in the GPD. These are legitimate matters of public concern at any time, but even more so when they are issues in an election, which is itself a matter of public concern.

In his posts, Bowen addressed these issues as a private citizen, and Ison and the Mayor disciplined Bowen for his comments, which the First Amendment prohibits.

### V. ARGUMENT

As noted in *Connick v. Myers*, 461 U.S. 138, 143-45 (1962), for most of the century it was

-9-

undisputed that public employees had no right to challenge conditions of employment – even those which curtailed their exercise of constitutional rights. *Id*., at 143 ("Justice Holmes . . . observed: 'A policeman may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.'"). However, beginning in the 1950s and early 1960s that assumption began to change. *Id*., at 144).

In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court defined the task as seeking "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. at 142 (alteration in 461 U.S.). The reason for the shift in understanding was to prevent government employees' rights to participate in political affairs from being "chilled." *Id*., at 145.

For a public employee's speech to be protected under the First Amendment, (1) the employee must speak as a private citizen, (2) the speech must address a matter of public concern, and (3) the employee's interest in expressing the speech cannot be outweighed by the state's interest, as an employer, in promoting effective and efficient public service. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018). If the employee's speech passes those three tests, the government cannot punish the employee for that speech. Whether speech is constitutionally protected is a question of law. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).

A.     **THE SUMMARY JUDGMENT STANDARD.**

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Burns v. Sherwin-Williams Co*., 78 F.4th 364, 370 (7th Cir. 2023)(internal quotations omitted). The moving party must identify for the court those portions of the record which demonstrate the absence of a genuine issue of material

fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

The court must decide, based on the evidence in the record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making its decision, the court must read the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Crain v. McDonough*, 63 F.4th 585, 591 (7th Cir. 2023).

**B.     BOWEN'S FACEBOOK POSTS WERE PROTECTED SPEECH.**

Whether an employee speaks as an employee or a citizen depends on whether the speech was made pursuant to his official duties. *Davis*, 889 F.3d at 845. An employee's official duties include both formal job requirements and the employer's real rules and expectations. *Id.* Simply because a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee, as opposed to citizen, speech. *Willoby v. Mason City, Illinois*, 449 F. Supp. 3d 806, 816 (C.D. Ill. 2020)( citing *Lane v. Franks*, 573 U.S. 228, 240 (2014)).

**1.     Bowen's comments would have been protected if they had been made by someone who was *not* a public employee.**

The first step in a proper analysis of a public employee's First Amendment claim is to decide whether the employee's speech would be protected if it were uttered by someone who was not a public employee. *Dishnow v. Sch. Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996).

Bowen's comments were made on two Facebook pages, "Greenwood Chatter" and "Greenwood, Indiana Crime Tracker", both of which were open to any individuals interested in the City of Greenwood. (Bowen Dec., ¶ 9). Bowen's posts, which were made in various "chat strings" concerning crime in Greenwood, referred to both Ison and Myers by name, and were critical of both

men for what Bowen believed was a lack of transparency in reporting crime, and for causing low morale on the GPD.  (SOUF, pp. 2-3).

One of Bowen's comments referred to Myers as "liberal Mark Myers," and referred to Ison as "the 'Yes Man,' James Ison."  (SOUF, p. 4).  Bowen also stated that Ison and Myers had "decided to turn Greenwood into 'Little Indy'."  (*Id*.).  In one post, Bowen said that Ison had "lied through his teeth and claimed violent crime was not up."  (*Id*.).

Myers, according to Bowen, was the "Nancy Pelosi of Johnson County, a failed career politician who has no understanding of what the people he represents wants and refuses to listen[,]" and was "disreputable" for running an "attack campaign" against his opponent.  (SOUF, p. 4).

In speaking of the GPD's morale, Bowen said Ison's "failed leadership" had "tanked morale at the department[,]" and "made the fear tactic of retaliation his biggest leadership trade (sic)."

But Bowen also made comments like the following:

> There are staffing issues everywhere [in GPD], however Chief Ison's solution was to take a hiring process that takes 8 months and cut it down to 4 somehow to rush the process before an election?  That's after he previously told everyone there was no way to decrease the time of the hiring process.  If the leadership at the [police] department was better, and Greenwood's salary wasn't less than comparable agencies lateral transfers would flock to Greenwood.  But they won't because unlike apparently everyone who supports mark (sic) they can see the issues which are much bigger than he plays them off to be.  No onne ever really comments about the mass exodus of police and firefighters coming if Mark Myers wins reelection, a large chunk of them have vowed to leave if he wins[.]"

(Exhibit C, Sam Bowen comment).

Other commenters on the Facebook pages made statements such as:

> "Is this a story newsworthy enough to spend extra resources on?" (Exhibit C, Greenwood Chatter post by Jay Hart reposting Eric McCormick).
>
> "Eric McCormick it sounds like you're trying to deny actual recorded

> numbers on crime. So all of these people who were murdered in Greenwood over the past year are actually alive somewhere? We are Jess (sic) mistaken?" (Exhibit C, Jay Hart, Greenwood Chatter post responding to Eric McCormick).
>
> "Tracy Rumble moral of the story, you knew it happened and you tried to deny it Tracy. Get out of here. We have no room for your crap on this page." (Exhibit C, David Berry, Greenwood Chatter Administrator, posting responding to Tracy Rumble).
>
> "Mark E Thompson the daily urinal is not going to write about crime in Greenwood in the middle of an election for their boy, Mark Myers." (Exhibit C, Jay Hart, Greenwood Chatter post responding to Mark E. Thompson).

The Seventh Circuit has noted that "the First Amendment does not protect only debate on issues that will affect the future of Global Civilization; people in a locality are entitled to air more parochial concerns." *Brown v. Disciplinary Comm. of Edgerton Volunteer Fire Dep't*, 97 F.3d 969, 973 (7th Cir. 1996). An author writing about a controversial occurrence, who fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, should generally be protected by the First Amendment. *Fasi v. Gannett Co.*, 930 F. Supp. 1403, 1409 (D. Haw. 1995), aff'd sub nom. *Fasi v. Gannett Co.*, 114 F.3d 1194 (9th Cir. 1997).

Bowen's comments like those of the other Facebook commenters, are indisputably dealing with issues of public concern. The transparency of the Mayor and Police Chief in reporting on crime in Greenwood, the morale of the police department, GPD's hiring process, and even the comparability of GPD's salaries with other police departments, may, to those not living or working in Greenwood, seem minor, or even trivial. However, to those who live and work in Greenwood – or even those who have a general interest in the city, those issues are clearly the kind of "parochial interests" the Seventh Circuit was talking about in *Brown*.

Speech on 'matters of public concern' is at the heart of the First Amendment's protection.

*Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011). In *Snyder*, the Supreme Court held that the First Amendment protected members of the Westboro Baptist Church who picketed at the funeral of a fallen Marine, carrying signs that stated "God Hates the USA/Thank God for 9/11," "America is Doomed," "Thank God for Dead Soldiers," "God Hates Fags," and "You Are Going to Hell." 562 U.S. at 448.

It is clear, given the holdings in *Snyder*, *Brown*, and other cases, that had Bowen not been a police officer, his comments could not have been suppressed or punished. Even Ison acknowledges that, if Bowen had not been a police officer, "he wouldn't be under my purview and under our polices." (Ison Dep., p. 28:20-24).

No reasonable trier of fact could conclude that Bowen was not speaking as a private person, or that his comments could legitimately be suppressed or punished had they been made by an individual who was not a Greenwood police officer.

## 2. **Bowen's comments, despite Ison's contention otherwise, were *not* personal employee grievances.**

Since Bowen's comments could not have been punished had they been made by a non-police officer, the second step in the test is to decide whether the speech falls within the category of personal employee grievances that the Supreme Court told us in *Connick* are not worthy of judicial intervention. *Dishnow*, 77 F.3d at 197 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). In *Connick*, the Court held that

> "[o]ur responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state."
> *Connick v. Myers*, 461 U.S. 138, 147 (1983)(alteration added).

Myers, the employee in *Connick*, an Assistant District Attorney, was informed she was being transferred to a different assignment, a transfer she strongly opposed. Myers discussed her proposed

transfer, and a number of other concerns about office management with Dan Weldon, one of District Attorney Connick's chief assistants.  461 U.S. at 140-41.  When Weldon suggested that Myers' concerns about the office were not shared by others in the office, Myers, while at work, prepared a questionnaire soliciting her colleagues views on office transfer policy, office morale, the need for a grievance committee, the level of confidence in various supervisors, and whether employees felt pressured to work in political campaigns.  *Id*., at 141.  After Myers, again while at work, had circulated the questionnaire to 15 assistant district attorneys, Weldon learned about it and informed Connick.  *Id*.  Connick terminated Myers for refusing to accept the transfer, and also told her that distributing the questionnaire was an act of insubordination.  *Id.*

Myers filed suit under 42 U.S.C. § 1983, arguing a violation of her right to free speech and the District Court found that the questionnaire was the real reason for Myers' termination, that it involved matters of public concern, and that the state had not "clearly demonstrated" that the survey "substantially interfered" with the operations of the District Attorney's office.  *Id*., at 141-42.  After the Fifth Circuit affirmed the District Court decision, the Supreme Court granted *certiorari*.

Justice White, writing for the five-four majority, held that, while Myers' speech was not

> totally beyond the protection of the First Amendment[,] . . . when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147.

*Connick* noted that Myers' questions about the confidence and trust that Myers' coworkers possess in various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of Myers' dispute over her transfer to another section of the criminal court.  *Id*., at 148.  However, Justice White noted that Myers' question about assistant district attorneys feeling

"pressured to work in political campaigns" did "touch upon a matter of public concern." *Id.*, at 149. Ultimately, *Connick* found that, while a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern[,]" Myers' questionnaire "is most accurately characterized as an employee grievance concerning internal office policy." *Id.*, at 154.

Here, Bowen's Facebook comments are the antithesis of Myers' questionnaire. First, while the employee in *Connick* prepared and circulated her questionnaire on "company time," Bowen's comments were made while Bowen was off-duty, and on his own time. (SOUF, p. 3). Second, the issues Bowen was addressing: transparency in crime reporting, the level of crime in Greenwood, and morale in the GPD, are, as even Ison and Myers concede, matters of public concern. (SOUF, pp. 5, 6). Moreover, while Ison contends that Bowen's statements were false, those comments were, in fact, Bowen's personal perspective about the ambiguities and disputed facts of a controversial issue, should generally be protected by the First Amendment. *Fasi*, 930 F. Supp. at 1409.

Most importantly, though, Bowen's Facebook posts were made within the context of a primary election campaign in which the issues Bowen addressed were front and center. (SOUF, pp. 2, 3, 4, 5).

Bowen posted his comments during what Ison concedes was "a very contentious mayoral election[.]" (Exhibit B, pp. 83:25-84:1). In that election campaign, incumbent Mayor Mark Myers was being challenged in his bid for reelection. (SOUF, p. 2). There was "a public debate on social media about the amount of crime being committed in the community, the number of homicides [in Greenwood]." (*Id.*).

The Defendant's claim that Bowen's Facebook posts were merely "personal grievances" ignores the manner, the content, and the context of those remarks. No reasonable trier of fact could find otherwise based on the evidence.

### 3. **<u>Ison and Myers had no convincing or legitimate reason to forbid the speech.</u>**

If Bowen's speech could not have been punished had it been made by a non-police officer, and if it was not a "personal grievance," then the Court must proceed to the third step, which involves deciding whether the Defendants had a convincing reason to forbid the speech. *Dishnow*, 77 F.3d at 197. The Court must strike a balance between the interests of the public employee in commenting on matters of public concern, and the interests of the public employer to efficiently perform required government operations. *Connick*, 461 U.S. at 142. However this balancing act must be done in such a way that the public employee's right to speak on public issues in not "chilled." *Id*. at 145.

To be proscribed, speech must be "so inimical to the maintenance of a proper [law enforcement] atmosphere as to be constitutionally permissible grounds for discipline or discharge." *Id*. It is important, at the summary judgment stage, to recall that this balancing of Bowen's freedom of expression against the Defendants' interests is to be done by the judge, not the jury. *Id*., at 198.

A public employee's critical statements that are ***not*** directed toward those with whom an employee would normally be in close, daily contact, present no question of maintaining discipline by immediate superiors or harmony among coworkers, and therefore cannot be suppressed or punished unless they could also be suppressed if made by a person who was ***not*** in the public employee's position. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 570 (1968).

Bowen's comments were directed toward Chief of Police Ison and Mayor Mark Myers. Bowen did not interact with Ison on a daily basis in the course of his employment. (Bowen Dec., ¶ 10). Bowen worked primarily on the night shift, and only saw Ison on occasion, as evidenced by the fact that Ison had to call Bowen in specifically to impose his "informal" discipline. (*Id*., ¶ 3). Moreover, it is self-evident that Bowen was not in frequent, intimate contact with Myers. (*Id*., ¶ 4).

Simply put, Bowen did not have "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning[,]" with either Ison or Myers. *Pickering*, 391 U.S. at 570.

Specifically, Ison contends that Bowen's references to Myers as "liberal Mark Myers," and to Ison as "the 'Yes Man' James Ison[,]" as well as his statement that the Defendants had "decided to turn Greenwood into 'Little Indy'[,]" are insubordinate and disrespectful. (SOUF, p. 5). This would appear to allege a violation of either § 320.5.8(d) and/or (e).

GPD's Social Media Policy states explicitly that "[n]othing in this policy is intended to prohibit or infringe upon any communication, speech, or expression that is protected under law. This includes speech and expression protected under state or federal constitutions as well as . . . other applicable laws." (Exhibit D, p. 1, § 1026.1). Even more to the point, the Social Media Policy states that GPD officers "maintain their rights to vote as they choose, to support candidates of their choice, and to express their opinions as private citizens on political subjects and candidates at all times while off duty." (SOUF, p. 4).

In other words, if Bowen made his comments as a private citizen, and they concerned a matter of public concern, they could only be prohibited under the Social Media Policy and the Standards if the comments were "so inimical to the maintenance of a proper [law enforcement] atmosphere as to be constitutionally permissible grounds for discipline or discharge." *Dishnow*, 77 F.3d at 197. Or, as expressed in *Pickering*, they were "directed toward those with whom an employee would normally be in close, daily contact," and thus raise questions of maintaining discipline by immediate superiors or harmony among coworkers. *Pickering*, 391 U.S. at 570.

Here, however, although Bowen's statements are critical, within the context of a contested mayoral primary, they are ***not*** "so inimical to the maintenance of a proper [law enforcement]

-18-


atmosphere as to be constitutionally permissible grounds for discipline or discharge." *Dishnow*, 77 F.3d at 197. They are neither defamatory, nor ***provably*** untrue because they are Bowen's Bowen's "personal perspective about the ambiguities and disputed facts [of a controversial issue, which] should generally be protected by the First Amendment. *Fasi*, 930 F. Supp. at 1409. They are Bowen's *opinion* of Myers' and Ison's actions.

Moreover, read together, *Pickering* and *Connick* stand for the proposition that a public employee's critical statements can only be punished if they are directed toward those with whom an employee would normally be in close, daily contact, and would therefore present questions of maintaining discipline by immediate superiors or harmony among coworkers, and if they could also be suppressed ***if made by a person who was not in the public employee's position.***

It is clear that even the harshest of Bowen's comments – that Ison "lied through his teeth" – if expressed by any ordinary citizen, especially in the context of an election, could be suppressed. Most importantly, perhaps, Bowen's remarks were directed to Ison and Myers, and Bowen was not in close, daily contact with either Defendant. Simply put, Bowen's relationships with both Ison and Myers were ***not*** the kind "for which it can persuasively be claimed that ***personal*** loyalty and confidence are necessary to their proper functioning. *Pickering*, 391 U.S. at 570 (emphasis added).

## VI. CONCLUSION

Bowen's political comments criticizing Chief Ison and Mayor Myers were published during a contested mayoral primary. The comments dealt with issues of police transparency and morale, which are undeniably matters of public concern – especially during that election campaign. Despite the Defendants' contention, Bowen was not stating personal grievances, but was addressing the fundamental issue of proper government operation. Most importantly, Bowen was addressing these issues as a private citizen.

The Defendants continue to assert that Bowen's speech can still be punished pursuant to GPD's Social Media Policy and Standards of Conduct. However, allowing those internal policies to exclude legitimate *private* speech by GPD employees on matters of *public* concern, on pain of actual financial discipline, would unquestionably "chill" GPD employees from engaging in the public debate.

For all of the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment With Respect to Liability should be GRANTED, and this matter should proceed to a trial on damages.

Respectfully submitted,

  *s/ Jay Meisenhelder*
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone:    317/231-5193
Direct Telephone:    317/899-9220
Facsimile Number:    317/982-5463
Email Address:       jaym@ecrls.com

**CERTIFICATE OF SERVICE**

I certify that on May 27, 2024, the foregoing was filed electronically. Copies will be sent to all counsel of record by operation of the Court's CM/ECF system.

  *s/ Jay Meisenhelder*