UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAM BOWEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:23-cv-01118-RLY-TAB |
| ) | |
| JAMES ISON and ) | |
| THE CITY OF GREENWOOD, INDIANA, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

If Bowen's rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myer in his social media postings did not constitute insubordination, it is difficult to imagine what more a government employee—particularly a police officer working in a paramilitary organization where loyalty, obedience to superior officers, and public confidence are critical—would have to say about his superiors before they could lawfully impose discipline.

Among other things, Bowen knowingly, intentionally, publicly and unapologetically called Chief Ison a "liar" and a hypocrite.  He said that Ison "lied through his teeth."  He accused Ison of "failed leadership."  He asserted that Ison's "biggest leadership trait" was "policing the police" and making the rank-and-file officers fear his retaliation.  He stated that Ison did not care about public safety.  He declared that Ison was "not a real leader" and he pronounced that Ison was "not fit for the job he has."

Bowen also, among other things, knowingly, intentionally, publicly and unapologetically stated that Mayor Myers did not care about public safety and was "blatantly lying to the public in hopes of skewing an election."  He sarcastically referred to the Mayor as "precious markey mark."

He characterized the Mayor's administration as a "gang." He called Chief Ison Mayor Myers's "yes man" and he said that Mayor Myers was the "Nancy Pelosi of Johnson County—a failed career politician who has no understanding of what the people he represents wants and refuses to listen to them."

Truth be told, Bowen is lucky that all Chief Ison did was revoke his take home car and off-duty work privileges until further notice. Chief Ison would have been justified in referring Bowen to the police merit commission for termination.[1] He opted to handle the situation with leniency and restraint. In return, he got this lawsuit.

Bowen was not disciplined for supporting Mayor Myers's opponent in the May 2023 Republican primary election. He was disciplined for his blatant insubordination. There was no First Amendment violation. Summary judgment should be entered in favor of the defendants.

## DISCUSSION

**I.     There is no genuine issue of material fact requiring a jury trial.**

Section II of Bowen's filing at Docket No. 55 is titled "Statement of Genuine Issues." [Dkt. 55 at p. 2.] The title suggests that there are factual disputes requiring a jury trial. But when the Court considers the content of that section, it will see that Bowen merely: (1) restates facts that are not in dispute; (2) supplements the record with facts that are either immaterial and/or not in dispute; and (3) argues the factual inferences that he believes the Court should draw in his favor. There is nothing in section II of Bowen's filing at Docket No. 55 that prevents the Court from deciding this case under Fed. R. Civ. P. 56.

---

[1] Bowen was referred to the police merit commission for misconduct occurring after May 2, 2023, which arose out of his use of a city-owned computer while on-duty to send racist, sexist, homophobic, and anti-Semitic messages. [Dkt. 59, 60, 61, 62 & 63 (Transcript of October 11, 2023, Greenwood Police Merit Commission Hearing).] His employment as a Greenwood police officer was then terminated. [*Id.*]

> **A.     Nothing in section II(A) prevents the Court from deciding this case under Fed. R. Civ. P. 56.**

In section II(A) of Bowen's filing at Docket 55, Bowen identifies five disputes that require his case to be tried to a jury.[2]

First, Bowen disputes the Defendants' statement that: "In January of 2023, Chief Ison became aware that Bowen and at least one other Greenwood police officer were posting things on social media that were inconsistent with the department's Speech, Expression and Social Networking Policy (Policy 1026)." [Dkt. 55 at p. 2 (citing Dkt. 49 at p. 6).]  Bowen contends that he did not violate Policy 1026.4.1. [Dkt. 55 at p. 3.]

Among other things, section 4.1 of Policy 1026 provides that Greenwood police officers may support any political candidate of their choosing and campaign for any political candidate of their choosing but may not hold themselves out as Greenwood police officers or use the authority or influence of their position while doing so. [Ison Decl. at Exhibit B (Policy 1026).]  Bowen submits that his "actions [did] not violate Policy 1026.4.1 because [he] was not on duty or in uniform" when he made his social media postings. [Dkt. 55 at p. 3.]  He suggests that whether he violated Policy 1026.4.1 is a disputed material fact that must be decided by a jury.

A jury does not need to decide whether Bowen violated section 4.1 of Policy 1026 because Chief Ison never said that Bowen violated it.  When asked about Policy 1026.4.1 at his deposition, Chief Ison said, "[Bowen] was never disciplined for endorsing a political candidate in any way. . . . .  He had privileges revoked because of his post that violated the policies that I've already stated. It wasn't because he was supporting a political campaign." [Ison Dep. p. 36, l. 4 – p. 20.]

The policies that Chief Ison believed Bowen had violated were these:

---

[2]     Bowen's brief numbers those disputes 1, 3, 4, 5, and 6.  He inadvertently omitted a number 2.

3

    (1)    GPD Policy 320 (Standards of Conduct), including but not limited to sections 3.20.3, 320.4, 320.5.1(a), 320.5.8(d), (e) & (j), 320.5.9(g), (l) & (p);

    (2)    GPD Policy 1026 (Speech, Expression and Social Networking), including sections 1026.2 1026.2(a), (b), (c), (d) & (f), and 1026.6;[3] and

    (3)    the City of Greenwood's social media policy contained in the City's Employee Handbook at pages 41-42.

[James Ison's Answers to Plaintiff's First Set of Interrogatories, Answer to Interrogatory No. 3 at p. 4-6; Ison Decl. at Exhibit D (Policy 320), Exhibit B (Policy 1026) & Exhibit E (Employee Handbook pages 41-42).]

    In any event, it is irrelevant whether Bowen violated any policies and, if so, which ones. The question in this case is whether Bowen's rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myers constituted insubordination or was protected by the First Amendment. Whether Bowen violated or complied with police department policies is "completely immaterial" as to whether a constitutional violation occurred. *Thompson v. City of Chicago*, 472 F.3d 444, 454-55 (7th Cir. 2006).

    <u>Second</u>, Bowen disputes the Defendants' statement that "Under Indiana law, municipal primary elections were scheduled to be held on May 2, 2023. Ind. Code § 3-10-6-5." [Dkt. 55 at p. 3 (citing Dkt. 49 at p. 9).] He argues that because Indiana Code § 3-8-2-4 requires candidates for mayor in an Indiana municipal primary election to file a formal declaration announcing their candidacy to run in the municipal primary no earlier than 118 days before the day of the primary election, "one could consider that the *start* of the mayoral primary was 118 days before May 2, or on January 4, 2023." [Dkt. 55 at p. 3.]

---

[3]    Observe that Chief Ison did not identify section 4.1 of Policy 1026 as a policy that Bowen had violated.

There is no genuine issue of material fact as to the date on which Indiana municipal primary elections were scheduled to be held in 2023.  The date was established by Indiana Code § 3-10-6-5, and Bowen even stated in his opening brief that May 2, 2023, was "the day of the primary election."  [Dkt. 35 at p. 4.]  What Bowen is really saying here is that, insofar as Defendants' motion for summary judgment is concerned, he wants the Court to draw all reasonable inferences in his favor, and he wants the Court to infer that the election campaign season—that is, the date on which it was reasonable to expect that people would have started discussing the candidates—started on January 4, 2023.

If the Court thinks it is reasonable to draw the inference that the "start" date of Indiana's mayoral primary election campaign season was January 4, 2023, it may do so.  But the date on which it became reasonable to expect that people would have started discussing the candidates running in Greenwood's 2023 Republican primary election is immaterial because it is not determinative of either party's claims or defenses in this lawsuit.

The question in this case is whether Bowen's rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myers constituted insubordination or were protected by the First Amendment. The date on which it became reasonable to expect that people would have started discussing the candidates running in Greenwood's 2023 Republican primary election does not change what Bowen said about Chief Ison and Mayor Myers.  Bowen's words were either insubordinate or they were constitutionally protected—and that is a question for the Court to decide as a matter of law. *Volkman v. Ryker*, 736 F.3 1084, 1089 (7th Cir. 2013) (whether a government employee's speech is constitutionally protected is a question of law to be decided by the court).

5

Third, Bowen disputes Defendants' statement that he did not live in Greenwood and could not vote in Greenwood's primary election but supported the man challenging Mayor Myers in the Republican primary because he did not like Mayor Myers and Chief Ison. [Dkt. 55 at p. 3 (citing Dkt. 49 at p. 9).] Bowen does not actually dispute this fact. He only seeks to make the point that just because he could not vote in Greenwood's 2023 Republican mayoral primary election did not mean he had no personal interest in who won that election. [Dkt. 55 at p. 3.]

Defendants grant that as an employee of the Greenwood Police Department, Bowen could have had a legitimate, personal interest in that election. Even so, that does not change what he said about Chief Ison and Mayor Myers. Again, Bowen's words were either insubordinate or they were constitutionally protected which is a question for the Court. *Volkman*, 736 F.3 at 1089.

Fourth, Bowen disputes Defendants' statement that Chief Ison was aware that Bowen was calling him a liar, saying that he was not fit to be chief, and making statements of a similar nature but initially felt that he could not address the matter because he did not want to be perceived as trying to punish Bowen for supporting Hubbard.[4] [Dkt. 55 at p. 3 (citing Dkt. 49 at p. 9.] Bowen claims that there is no evidence in the record to support it.

Defendants' statement is supported by the record. The Court can take a look for itself. [Dkt. 49 at p. 9 – 10 (citing Ison Dep. p. 22, l. 7-16—there was a mayoral primary election; Bowen was violating the social media policy; p. 25, l. 6 - p. 26, l. 20—the president of the merit commission talked to the chief about things she had seen officer posted on social media; in the chief's view, Bowen's social media postings had crossed the line as being disrespectful towards other members of the department, but the chief was ignoring it because he did not want to give the perception that he would take action against officers for supporting a political candidate; Transcript

---

[4]     Hubbard was Mayor Myers's opponent in the 2023 Republican mayoral primary election.

of October 2023, Greenwood Police Merit Commission Hearing at p. 83, l. 23 – p. 85, l. 25—the chief was aware that Bowen was calling him and other city officials liars; initially, he chose to ignore it because he did not want to give the impression that by issuing discipline he was punishing officers for supporting a candidate).]

In any event, why Chief Ison did not take immediate action to discipline Bowen as soon as he became aware that Bowen was publicly calling him a liar, saying that he was not fit to be chief, *et cetera* is not a material fact upon which resolution of this lawsuit turns.  It is a background fact that that helps put other facts into context, including the fact that the president of the police merit commission approached Chief Ison and asked him why he was allowing officers to post things on social media that were embarrassing and harmful to the department.

The question in this case is not why Chief Ison did not discipline Bowen sooner. Again, it is whether Bowen's rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myers constituted insubordination or were protected by the First Amendment.  For the third time, Bowen's words were either insubordinate or they were not.  And again, that is a question for the Court.  *Volkman*, 736 F.3 at 1089.

Fifth, Bowen asserts that the defendants improperly included their "interpretation" of his claim against them in one section of their brief when they should have included it in another.  [Dkt. 55 at p. 4.] This assertion does not reveal the existence of a material fact to be decided by a jury. Notably, Bowen does not contend that the defendants have misinterpreted his claim against them.

      **B.    Nothing in section II(B) prevents the Court from deciding this case under Fed. R. Civ. P. 56.**

In section II(B) of Bowen's filing at Docket 55, Bowen either restates facts that are not in dispute or supplements the record with facts that are immaterial and/or not in dispute. Nothing in

section II(B) prevents the Court from deciding this case under Fed. R. Civ. P. 56. Defendants do, however, wish to comment on Bowen's paragraph 5.

In paragraph 5, Bowen states that Greenwood's homicide rate rose dramatically during 2022. [Dkt. 55 at p. 5, ¶ 5.] That is true. But the statement requires context. In the past 10 years, Greenwood has averaged 1.8 homicides per year. [Ison Dep. at p. 24, l. 17 – p. 25, l. 5.] The homicide rate rose "dramatically" in 2022 to 6, but it did so because of the active shooter incident at the Greenwood Mall that year. And two of the six homicides in 2022 were determined to have been justified (*i.e.*, in self-defense). [*Id.*]

To the extent that Bowen wants the Court (and anyone who might read his brief which is publicly available through PACER) to believe that Chief Ison and Mayor Myers were not transparent with the public about crime, neither the Chief nor the Mayor hid anything from the public about the number of homicides in Greenwood in 2022 or any other year. The "dramatic" rise in homicides from a 10-year average of 1.8 per year to exactly six in 2022 was due to the Greenwood Mall active shooter incident. [*Id.*]

But the question in this case is not whether Ison and Myers were, in fact, transparent with the public about the number of homicides and/or other crimes in Greenwood in any particular year. The question in this case is whether Bowen's words constituted insubordination or were protected by the First Amendment.

## II. Bowen's attempt to cast his insubordination as protected political speech must be rejected.

Bowen argues that because it was election season—a time when people would be talking about the candidates—and because he was not on duty or in uniform when he posted on social media, everything he said about Chief Ison and Mayor Myers, no matter how rude and disrespectful, was protected by the First Amendment. Bowen's insubordination is not, however,

8

transformed into protected political speech because it occurred in the months leading up to an election.  If Bowen thought that Chief Ison and Mayor Myers were not doing enough to prevent crime, not being transparent with the public about crime, and not adequately supporting Greenwood's police officers, he could have expressed his concerns and participated in on-line discussions without calling them liars, hypocrites, failed leaders, unfit for their jobs, "yes men", "the Nancy Pelosi of Greenwood—a failed career politician", and the like.  Words matter, and whether Bowen's words were insubordinate does not turn on how soon or remote some upcoming election might have been.

Bowen emphasizes the <u>issues</u> he claims to have been concerned about, including public safety, police department transparency, and the morale of the city's officers.  But he does not address what he <u>actually said</u>.  By focusing on issues that the parties agree are matters of public concerns, he deflects from the content of words.  He makes no attempt to explain how his rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myers contributed in any meaningful way to a discussion of those issues.

Bowen also fails to address the overall context of his words.  His words were not published solely in the context of a contentious primary election campaign.  His words were published in the context of his resentment over having received a written reprimand—a reprimand he thought was so unfair that he immediately resigned his position as a field training officer ("FTO") because he was "not interested in being told what I need to do as an FTO."[5]  [Bowen Dep. Exhibit 13 – audio recording of Bowen's conversation with Mayor Myers at 0:3:00 to 0:3:20.]

---

[5]    It is curious that Bowen would deny that his words could have been insubordinate, [Dkt. 55 at p. 14 & 16], when  in refusing to accept an assignment to investigate an OWI (operating while intoxicated) he had already demonstrated his unwillingness to follow the requests and commands of his superiors, [Ison Dep. at Exhibit A (January 18, 2024, Notice of Counseling/Reprimand)].

Bowen claims in his filing at Docket No. 55 that Defendants offered no evidence to support the notion that he was a disgruntled employee resentful of the discipline that had been imposed upon him, but he is incorrect.  In their filing at Docket No. 49, Defendants cited Bowen's deposition testimony wherein he testified that he believed Chief Ison had unjustly disciplined him for minor things like his refusal to take responsibility for an OWI investigation because it was too close to the end of his shift and his public urination behind a dumpster at the location of a private business. [Dkt. 49 at p 3-4 (including the citations therein).]  Defendants' also cited Bowen's social media postings wherein Bowen said that Chief Ison's "tactic" was to "police the police" and that the Chief "ha[d] made the fear tactic of retaliation his biggest leadership trait and Bowen's social media posting wherein he pondered, "Why does Chief Ison case so little about his officers and instead of talking to them and figuring out why they don't like him he doubles down on his retaliation efforts?  It's because he's not a good leader and not fit for the job." [Dkt. 49 at p. 5.]  There is plenty of evidence in the record to support the conclusion that Bowen is more properly regarded as an aggrieved employe than a member of the general public speaking on matters of public concern.

It is well-settled in the Seventh Circuit that police departments, because they are paramilitary organizations charged with maintaining public order and safety, have a more significant interest than other government employers in regulating the speech activities of their employees in order to promote efficiency, foster loyalty and obedience to superior officers, maintain moral and instill confidence. *Kokkinis v. Ivkovich*, 185 F.3d 840, 845-846 (7th Cir. 1999). A police department's ability to give orders and expect that they will be followed, provide constructive criticism and trust that it will be respected, and issue discipline and presume it will

10

correct errant behavior is integral to its functioning. This functioning is undermined when a police officer publicly calls the department's chief the types of things that Bowen called Chief Ison.

A chief of a police department cannot have confidence that an officer under his command will carry out his directives when that officer is publicly questioning whether the chief is fit for his job and asking others to do the same. Chief Ison was not required to tolerate Bowen's insubordination. He was justified in imposing the minor discipline that he imposed, and his conduct did not violate Bowen's First Amendment rights.

## CONCLUSION

Insubordination includes disrespectful and insulting statements, sarcasm and mockery directed to or about a superior. It involves expressing disobedience, challenging authority, and undermining the established chain of command through spoken words. There is no denying that Bowen's rude, hostile, disrespectful, immature name calling and personal attacks against Chief Ison and Mayor Myer in his social media postings constituted insubordination and were not protected by the First Amendment. The Court should grant summary judgment in favor of Defendants.

Respectfully submitted,

CLARK JOHNSON & KNIGHT, LTD.

*/s/ Pamela G. Schneeman*
Pamela G. Schneeman, Atty. No. 18142-53
Attorney for Defendants James Ison and
the City of Greenwood

CLARK JOHNSON & KNIGHT, LTD.
11590 N. Meridian Street, Suite 650
Carmel, IN 46032
Phone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@CJKlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, a copy of the foregoing DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

Jay Meisenhelder
JAY MEISENHELDER EMPLOYMENT &
 CIVIL RIGHTS LEGAL SERVICES, PC
650 North Girls School Road, Suite D40
Indianapolis, IN 46214

                 */s/ Pamela G. Schneeman*
                 Pamela G. Schneeman

CLARK JOHNSON & KNIGHT, LTD.
11590 N. Meridian Street, Suite 650
Carmel, IN 46032
Phone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@CJKlaw.com